# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| APRIL HAUGABROOK<br>c/o Hux Law Firm, LLC<br>3 Severance Circle #18147<br>Cleveland Heights, OH 44118<br><br>           Plaintiff,<br><br>           v.<br><br>WESTERN RESERVE AREA AGENCY ON AGING<br>c/o Ronald Hill<br>925 Euclid Ave., Suite 600<br>Cleveland, Ohio 44115<br><br>           Defendant. | CASE NO.<br><br>**JUDGE:**<br><br><br><br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, April Haugabrook, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Plaintiff Haugabrook is a resident of the City of Mayfield Heights in Cuyahoga County, Ohio.

2. Defendant Western Reserve Area Agency on Aging ("WRAAA") non-profit organization conducting business at 1700 E. 13th St #114, Cleveland, OH 44114.

## JURISDICTION AND VENUE

3. Personal jurisdiction is proper over Defendants pursuant to 28 U.S.C § 1331 in that Haugabrook is alleging a federal law claim arising under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"), and the Americans with Disabilities Act of 1990, as amended, 43 U.S.C. § 12101, et seq ("ADA").

4. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, because it is the district court for the district, division, and county within which the Defendant operates and conducts business.

5. Prior to instituting this action, Haugabrook filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2020-01921, alleging that Defendant and its agents had discriminated her due to her association with her godson.

6. Haugabrook was mailed her Right to Sue Notice from the EEOC on or about December 9, 2020.

7. A true and accurate copy of Haugabrook's Right to Sue Notice is attached as Exhibit 1.

8. Haugabrook has properly exhausted her administrative remedies pursuant to 29 U.S.C. § 626(e).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

10. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over all other claims in this Complaint because they arise out of the same case or controversy.

## FACTS

11. Haugabrook is a former employee of WRAAA.

12. On or about August 15, 2016, WRAAA hired Haugabrook.

13. As a Waiver Service Coordinator, Haugabrook's responsibilities included but were not limited to assessing Member needs for service waivers in the home and monitoring services that are in place every 90 days to ensure each Member's needs are being addressed.

14. On or about September 2019, Haugabrook filed for intermittent FMLA.

15. Haugabrook needed FMLA to take care of KM, her minor godson with a serious health condition.

16. Haugabrook has custody over KM and has kinship placement over KM.

17. On or about September 13, 2019, Haugabrook received notice that her FMLA request was approved by York, which serves as WRAAA's disability claims processor.

18. Despite Haugabrook being approved for intermittent FMLA leave, Jennifer Morningstar, Haugabrook's supervisor, repeatedly prevented Haugabrook from using FMLA.

19. Morningstar informed Haugabrook that she was only permitted to use FMLA if she took the entire day as FMLA leave.

20. Morningstar's statements about how FMLA leave was to be used by Haugabrook were not correct.

23. Stacy Turner, Head of HR for WRAAA, failed to take any action to correct Morningstar or otherwise instruct her to comply with Haugabrook's approved FMLA leave.

24. Additionally, Morningstar told Haugabrook that she was not permitted to use any PTO time to take KM to his doctor's appointments.

25. Around the end of 2017 through beginning of 2018, Haugabrook went on FMLA leave following a surgery.

26. While Haugabrook was on leave, Morningstar was supposed to cover Haugabrook's cases.

27. Morningstar failed to cover Haugabrook's cases, which resulted in Haugabrook's cases being behind when she returned from leave and Haugabrook being disciplined.

28. WRAAA repeatedly interfered with Haugabrook's right to use her most recent approved FMLA leave.

29. On or about January 22, 2020, after WRAAA repeatedly interfered with Haugabrook's right to use her most recent approved FMLA leave, WRAAA terminated Haugabrook.

3

30. The pretextual reason for termination was that Haugabrook's documentation was repetitive despite her being complimented on her documentation the week prior to her termination

31. Haugabrook's termination is not rooted in any legitimate business reason.

## COUNT I:

## UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

32. Haugabrook restates each and every paragraph of this Complaint as though it were fully restated herein.

33. Pursuant to 29 U.S.C. § 2601 et seq., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

34. WRAAA is a covered employer under the FMLA.

35. During her employment , Haugabrook qualified for FMLA leave.

37. During her employment, Haugabrook was granted intermittent FMLA.

38. WRAAA failed to properly advise Haugabrook of her rights under the FMLA.

39. WRAAA unlawfully interfered with Haugabrook's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and Section 825.220 of the FMLA regulations.

40. WRAAA violated Section 825.300(c)(1) of the FMLA and interfered with Haugabrook's FMLA rights when WRAAA would not grant the use of approved intermittent FMLA leave, even though she had not fully exhausted her FMLA leave.

41. As a direct and proximate result of WRAAA's actions, Haugabrook has suffered and will continue to suffer injury and damages.

## COUNT II:

## RETALIATION IN VIOLATION OF FMLA

42. Haugabrook restates each and every prior paragraph of this complaint, as if it were fully restated herein.

43. During her employment, Haugabrook applied for and was granted FMLA leave.

44. After Haugabrook attempted to use her qualified FMLA leave, WRAAA retaliated against her.

45. WRAAA retaliated against Haugabrook by informing her that she had been terminated due to work performance.

46. WRAAA willfully retaliated against Haugabrook in violation of 29 U.S.C. § 2615(a).

47. As a direct and proximate cause of WRAA's wrongful conduct, Haugabrook is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## COUNT III:

## DISABILITY DISCRIMINATION IN VIOLATION OF ADA

48. Haugabrook restates each and every paragraph of this Complaint as though it were fully restated herein.

49. Haugabrook was discriminated against because of her association with her godson as defined by the ADA.

50. Specifically, Haugabrook was subjected to discriminatory practices by WRAAA because of her association with her godson.

51. Haugabrook's godson suffered from a disability as defined by the ADA.

52. In the alternative, WRAAA perceived Haugabrook's godson as being disabled.

53. Haugabrook's godson's condition required her to provide needed assistance because she is her godson's kinship caregiver.

54. WRAAA created and sustained a discriminatory work environment by interfering Haugabrook's ability to provide essential medical care for her godson.

55. WRAAA discriminated against Haugabrook not allowing her to take extended time to handle her godson's medical needs.

56. WRAAA violated the ADA by discriminating against Haugabrook based on her association with her godson.

57. WRAAA violated the ADA by denying to provide Haugabrook the necessary time needed to provide medical care for her godson..

58. As a direct and proximate result of WRAAA's actions, Haugabrook has suffered and will continue to suffer injury and damages.

## COUNT VI:

## DISABILTY DISCRIMINATION IN VIOALTION OF R.C. § 4112.02

59. Haugabrook restates each and every prior paragraph of this complaint, as if it were fully restated herein.

60. Haugabrook was discriminated against because of her association with her godson as defined by § 4112.02.

61. Specifically, Haugabrook was subjected to discriminatory practices by WRAAA because if her association with her godson.

62. Haugabrook's godson suffered from a disability as defined by § 4112.02.

63. In the alternative, WRAAA perceived Haugabrook's godson as being disabled.

64. Haugabrook's situation required her to provide needed care because she is her godson's kinship caregiver.

65. WRAAA created and sustained a discriminatory work environment by interfering with Haugabrook's ability to provide essential medical care for her godson.

66. WRAAA discriminated against Haugabrook not allowing her to take extended time to handle her godson's medical needs.

67. WRAAA violated R.C. § 4112.02 by discriminating against Haugabrook based on her association with her godson.

68. WRAAA violated R.C. § 4112.02 by denying Haugabrook to provide the necessary time needed to provide medical care for her godson.

69. As a direct and proximate cause of WRAAA's discrimination against Haugabrook, she suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Haugabrook demands from Defendant the following:

(a) Issue a permanent injunction:

   (i) Requiring WRAAA to abolish discrimination, harassment, and retaliation;

   (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

   (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against each Defendant of compensatory and monetary damages to compensate Haugabrook for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorney's fees and non-taxable costs for Haugabrook claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

        _____
        James J. Hux (0092992)
        **HUX LAW FIRM, LLC**
        3 Severance Circle #18147
        Cleveland Heights, Ohio 44118
        Phone: (937) 315-1106
        Fax:    (216) 359-7760
        Email: jhux@huxlawfirm.com

        *Attorney for Plaintiff*

## JURY DEMAND

Plaintiff April Haugabrook demands a trial by jury by the maximum number of jurors permitted.

                                               _____
                                               James J. Hux (0092992)